UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL FELLNER,<br><br>     *Plaintiff,*<br><br>-vs-<br><br>KERRY CAMERON, individually and as Owner and Investment Consultant of Investment Brokers of SW Florida, Inc.<br>   and<br><br>NANCY CAMERON, individually and as Owner and Licenced Realtor for Investment Brokers of SW Florida, Inc.<br>   and<br><br>INVESTMENT BROKERS OF SW FLORIDA, INC.,<br><br>   and<br><br>US BANK NATIONAL ASSOCIATION, as Trustee for BAFC 2007-3,<br><br>   and<br><br>RIVERSIDE BANK OF THE GULF COAST,<br><br>   and<br><br>SECURITY NATIONAL MORTGAGE COMPANY OF UTAH,<br><br>   and<br><br>COUNTRYWIDE HOME LOANS SERVICING, LP, as tranferee and assignee of Greenpoint Mortgage Funding, Inc., | CIVIL COMPLAINT FOR DAMAGES<br><br>Civ. No: _____ |

|  |  |
|---|---|
| and | ) |
|  | ) |
| **GREENPOINT MORTGAGE FUNDING, INC.,** | ) ) |
|  | ) |
| and | ) |
|  | ) |
| **AMERICA'S SERVICING COMPANY,** | ) |
|  | ) |
| *Defendants.* | ) |

## COMPLAINT

**Daniel Fellner**, residing at 2731 Colvin Boulevard, Buffalo, NY (Erie County), the Plaintiff herein, by and through his attorneys, Tronolone & Surgalla, PC, Daniel G. Tronolone, Esq., of counsel, complaining of the Defendants, **Kerry Cameron,** individually and as Owner and investment consultant to **Investment Brokers of SW Florida, Inc., Nancy Cameron,** individually and as Owner and licensed realtor for **Investment Brokers of SW Florida, Inc.** (both "Cameron" Defendants will be hereinafter referred to together as **"The Camerons"**), **Investment Brokers of SW Florida, Inc.** (hereinafter "**IBSWF**"), US Bank National Association, as Trustee for BAFC 2007-3 (hereinafter **USBNA**), **Riverside Bank of the Gulf Coast** (hereinafter **RBGC**), **Security National Mortgage Company of Utah** (hereinafter **SNMC**), Countrywide Home Loans Servicing, LP (hereinafter CHLS), **Greenpoint Mortgage Funding, Inc.** (hereinafter "**GMFI**") and **America's Servicing Company** (hereinafter "ACS")[all mortgage companies and providers will hereinafter be referred to, together, as **Mortgagees**], herein alleges:

## INTRODUCTION

This is an action for numerous civil counts and for numerous types of relief. The Counts of this complaint are broken into sections as follows:

I. The Fraudulent overvaluation of Real Property;

II. Fraudulent business dealings and undisclosed conflicts of interest;

III. Breach of fiduciary duty;

IV. Fraudulent representation of quality of real estate market and predatory lending and/or targeting of poor and/or desperate buyers/rent-to-owners;

V. Fraudulent property management and money/fees/profit skimming; and

This complaint also requests relief in the form of damages that exceed the statutory, jurisdictional minimum for this Court.

## JURISDICTION

Jurisdiction in this action is predicated upon 28 U.S.C. § 1332, diversity of citizenship between the parties, where the Plaintiff lives in Erie County, New York State and Defendants, **The Camerons**, live in Lee County, Florida, **IBSWF** is located in Lee County Florida, and all other Defendants are located in various states in the Union, but all Defendants regularly pursued and transacted business in New York State, with internet advertising, magazine and periodical advertising in publications in New York State, and with specific Newspaper advertising in Erie County, from Defendants, **The Camerons** and **IBSWF**; and upon 28 U.S.C. section 1331, Federal Question, where Defendants engaged in "unfair or deceptive acts or practices in or affecting commerce", proscribed by Title 15, section 45 of Federal Law.

## THE PARTIES

1. At all times hereinafter mentioned, Plaintiff, **Daniel Fellner**, was and still is an individual residing in the County of Erie and State of New York.

2. Upon information and belief and at all times hereinafter mentioned, Defendants, **The Camerons** and **IBSWF**, were and still are residents of and situate in the County of Lee, State of Florida, respectively.

3. At all relevant times hereinafter mentioned, Defendants, **The Camerons**, were and still are licenced Realtors and real estate brokers, engaged in the business of selling Real Estate and investing in real estate, procuring mortgages and managing mortgaged/purchased properties for clients.

4. At all relevant times hereinafter mentioned, said Defendants, **The Camerons** and **IBSWF**, held themselves out to be experts in all things related to the buying, selling, renting, managing and investing in real estate.

5. At all relevant times hereinafter mentioned, Defendant, **IBSWF**, was and still is a business incorporated in the State of Florida, holding itself out to be a business for selling Real Estate and investing in real estate, procuring mortgages, and managing mortgaged/purchased properties for clients.

6. At all times relevant hereinafter mentioned, Defendants, **IBSWF** and **The Camerons**, transacted, advertised and pursued business in the State of New York, particularly in the County of Erie.

7. At all times relevant hereinafter mentioned, Defendants, **Mortgagees**, transacted, advertised and pursued business in the State of New York. Each such Defendant is either a current or previous note holder, an assignor/assignee of a mortgage note, or a mortgagee for property that is

the subject of this action, with the exception of **ACS** and **BAFC**, which are a loan servicing company that has serviced mortgages associated with the properties herein and a funding source for the purchase of assignments of mortgages on said properties, respectively. The following Mortgagee Defendants hold notes on said properties as follows:

A. **USBNA**: trustee and assignee of a note for the property commonly known as <u>137 Prairie Falcon Drive, in Groveland, FL 34736</u>, in the amount of $192,000, which was assigned to **USBNA** by **RBGC** and said assignment was purchased by **USBNA** as trustee of a fund 2007-3 from Bank of America Funding Corporation;

B. **SNMC**: holder of a note for the property commonly known as <u>1930 Dolphin Drive, Kissimmee, FL 34759</u>, in the amount of $172,050;

C. **RBGC**: holder of a note for the property commonly known as <u>527 Carlsbad, Kissimmee, FL 34758</u>, in the amount of $200,800;

D. **CHLS**: transferee and assignee of notes for the properties commonly known as <u>848 South Troy, Lehigh Acres, FL 33936</u> and <u>3212 Murray Hill Loop, Kissimmee, FL 34758</u>, in the amounts of $183,900 and $206,700, respectively, which were assigned to **CHLS** from **GMFI**.

The properties in the above 4 subparagraphs are the 5 properties subject to this action; they are as follows: 137 Prairie Falcon Drive, in Groveland, FL 34736; 1930 Dolphin Drive, Kissimmee, FL 34759; 527 Carlsbad, Kissimmee, FL 34758; 848 South Troy, Lehigh Acres, FL 33936; and 3212 Murray Hill Loop, Kissimmee, FL 34758.

## FACTS AND COUNTS

8.      In and around the mid 1990's, Defendant, **Kerry Cameron**, proposed and encouraged Plaintiff to loan money, allegedly for one of Defendants', **The Camerons** and **IBSWF**, other client's purchase of real estate, in exchange for an interest rate return on the loan. Plaintiff agreed to be such loans twice; both times receiving payment in full, together with interest.

9.      Between the years 1992 and 2005, Defendant, **Kerry Cameron**, also induced the Plaintiff into participating in several real estate propositions, notes and mortgages for investment, whereby Defendants, **The Camerons** and **IBSWF**, located and valued properties for purchase, conducted purchase negotiations on behalf of the parties, set up funding for the purchase and rent of the properties, controlled and/or prepared the mortgage and purchase paperwork, and managed the properties purchased by Plaintiff by finding available tenants to live in the houses on a "rent to own" basis, and controlling and preparing the rent-to-own documents/agreements.

10.     Paperwork related to the mortgages, sales, rent-to-own agreements and any other document that Plaintiff was induced to sign in relation to said transactions, were always given to Plaintiff with the plain instruction to sign and return to Defendants immediately. As such, and in reliance on Defendants' encouragement and represented expertise, Plaintiff signed all paperwork and immediately returned signed copies to Defendants.

11.     Plaintiff does not have any real estate experience or expertise with which he could have verified or tested the legality and/or prudence of the real estate investments/purchases/agreements that he was induced to enter in to, through the Defendants herein.

12.     Upon information and belief, Defendants, **The Camerons**, are licensed Real Estate agents/brokers in the State of Florida and/or held themselves out to be a licensed Real Estate

Agents/Brokers in the State of Florida in all of their business and personal dealings with Plaintiff. In this capacity, and through the Defendant business, **IBSWF**, Defendants acted as a real estate brokers/agents, salespersons and managers over all the properties that were acquired pursuant to the parties' business arrangements.

13. That, as Real Estate licensees, whether acting as brokers or not, the Defendants were and are subject to Florida laws regarding their conduct, thus owing certain duties to the Plaintiff. To wit, according to Title 32, Chapter 475 of Florida State Law:

    A. "A real estate licensee owes to a potential seller or buyer with whom the licensee has no brokerage relationship the following duties:

        1. Dealing honestly and fairly;

        2. Disclosing all known facts that materially affect the value of the residential real property which are not readily observable to the buyer; and

        3. Accounting for all funds entrusted to the licensee.

(Section 475.278(4)(a));

    B. "The duties of a real estate licensee owed to a buyer or seller who engages the real estate licensee as a single agent include the following:

        1. Dealing honestly and fairly;

        2. Loyalty;

        3. Confidentiality;

        4. Obedience;

        5. Full disclosure;

  6. Accounting for all funds;

  7. Skill, care, and diligence in the transaction;

  8. Presenting all offers and counteroffers in a timely manner, unless a party has previously directed the licensee otherwise in writing; and

  9. Disclosing all known facts that materially affect the value of residential real property and are not readily observable.

(Section 475.278(3)(a)); and

C. "A real estate licensee may not operate as a disclosed or nondisclosed dual agent. As used in this section, the term "dual agent" means a broker who represents as a fiduciary both the prospective buyer and the prospective seller in a real estate transaction." (Section 475.278(1)(a)).

14. That said Defendants are also under similar and further duties, pursuant to the National Realtor "Code of Ethics and Standards of Practice" as follows:

 Article 1: When representing a buyer, seller, landlord, tenant, or other client as an agent, REALTORS® pledge themselves to protect and promote the interests of their client. This obligation to the client is primary, but it does not relieve REALTORS® of their obligation to treat all parties honestly;

 Article 2: REALTORS® shall avoid exaggeration, misrepresentation, or concealment of pertinent facts relating to the property or the transaction;

Article 11:     The services which REALTORS® provide to their clients and customers shall conform to the standards of practice and competence which are reasonably expected in the specific real estate disciplines in which they engage; specifically, residential real estate brokerage, real property management, commercial and industrial real estate brokerage, real estate appraisal, real estate counseling, real estate syndication, real estate auction, and international real estate; and

Article 12:     REALTORS® shall be honest and truthful in their real estate communications and shall present a true picture in their advertising, marketing, and other representations. REALTORS® shall ensure that their status as real estate professionals is readily apparent in their advertising, marketing, and other representations, and that the recipients of all real estate communications are, or have been, notified that those communications are from a real estate professional. *(Amended 1/08)*

(The foregoing was obtained at http://www.realtor.org/MemPolWeb.nsf/pages/COde)

15.     That Defendants would locate properties available for purchase in and around the Lee County area that they deemed suitable for investment in the context of renting the properties to third parties until such time as said third parties could purchase said properties (e.g. "rent to own").

16.     Between the years mentioned above, some rent to own tenants, in the properties that Plaintiff purchased through the Defendants' services, were able to procure their own mortgages and buy out the remaining amount owing on the house (i.e. they bought the house from Plaintiff, or

"cashed out" as such action is known), and all were able to afford rental payments.

17. Said properties were always purchased on Plaintiff's credit, with no money down by Plaintiff and with the addition of so-called promissory notes, allegedly to cover the cash-down requirement of the purchases. Plaintiff signed all real estate documents for the purchase, noting the cash down requirement, but never sent money, relying on the promises of Defendants that the money would be covered by said promissory notes. At no time did Plaintiff ever see such a promissory note (except for the two, supposedly similar notes that he held in the past), nor did he know from whom the money was coming.

18. The real estate paperwork does not reflect the use of promissory notes for the funding of the purchases.

19. On or about October, 2006, Defendant, **Kerry Cameron**, acting on behalf of himself and Defendants, **Nancy Cameron** and **IBSWF**, contacted Plaintiff concerning eight properties which Defendants insisted Plaintiff purchase and represented to Plaintiff that said properties were suitable as investments in the context of this rent to own strategy and that said property purchases would be profitable. Indeed, Defendants insisted that Plaintiff must get in on the deal for as many properties as he could.

20. Between 2/1/2007 and 12/1/07, Plaintiff, acting in reliance upon the Defendants' representations with respect to said properties, purchased five of the same. The purchase transactions were carried out as usual: the mortgage was procured in Plaintiff's name, by **The Camerons** and/or **IBSWF** and with Defendants, **Mortgagees**; and the cash-down requirement on the property was, upon information and belief, taken care of with a so-called promissory note, which the Plaintiff never saw, and which was not reflected on the real estate paper work, to the best of Plaintiff's knowledge.

21. At all times relevant, the Defendants represented to Plaintiff that the price of said properties, the timing for the purchases, and the manner in which the properties were purchased, was legal and was conducive to the parties plans to employ the rent to own method to sell the properties for a profit at a later date.

22. At all times relevant, the Note holders on each mortgage, being Defendants, **Mortgagees**, had a fiduciary duty to the mortgagor, Plaintiff herein, to provide funding on accurate and honest property valuations. Said Defendants knew of should have known that the actual value of each property that the mortgages were based upon was less than the value of the note they were holding for each property. It is well known, and was commonly known at the time of the signing of the mortgages, that the Real Estate market, country wide, but especially in Florida, was/is in a major slump; as such, the real property values were grossly overinflated.

23. At all times relevant, Plaintiff relied on Defendants' representations and expertise, because Plaintiff knows very little about the real estate business, about mortgages or promissory notes, or about the values of property, and because Defendants' held themselves out to be experts in each area of Real Estate purchase, investment and mortgaging related to the transactions, and also maintained that they were acting on behalf of the Plaintiff, herein.

## COUNT I

24. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "23" above as if more fully set forth herein.

25. Upon information and belief, Defendants and/or their agents inflated the values of all of said properties- and/or knew or should have known that the property values were inflated- well above the fair market value of like properties at that time, in and around the respective areas where

each property was located.

26.     That the actual present day value of said properties is less than the value of the properties' mortgages owing and the real value of the properties at the time of the purchase was less than the mortgage amount procured for the purchase.

27.     Upon information and belief, the Defendants, **The Camerons** and **IBSWF**, received "kick backs" from these real estate transactions from the difference between the fair market value of the properties and the inflated purchase price.

28.     Defendants, **Mortgagees**, received business commissions and/or fees from these transactions at a time when Real Estate/Mortgage business was severely declining.

29.     All Defendants knew or should have known that the real estate market at that time was unstable, and that the purchase prices was well above the fair market value of the properties. At the time Defendants made said representations, they knew them to be false and made them with the intent to deceive the Plaintiff and induce him to purchase the aforementioned properties.

30.     Defendants, **Mortgagees**, were complicit in the overvaluation of the properties, because of their knowledge of the market and their duty to the mortgagor to accurately, honestly and fairly provide moneys for mortgages that reflect the real market value of real estate.

31.     Plaintiff was ignorant of the falsity of the representations, believed them to be true and relied upon them, and, as a result, was induced to purchase the aforementioned properties to his detriment.

32.     Plaintiff would not have purchased the aforementioned properties except for the fact that he relied upon the Defendants' false representations and expertise/duties.

33.     Defendants' actions were fraudulent, dishonest, unethical and illegal, in direct contradiction to the Florida State, New York State and National law.

34. By reason of the foregoing, the Plaintiff has been damaged in the sum of $1,000,000.00, and continues to be injured, in that the properties must be sold at a loss or lost to foreclosure all together.

## COUNT II

35. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "34" above as if more fully set forth herein.

36. Upon information and belief, the Defendants had undisclosed contacts with all or some of the following: the builders, the contractors, the mortgage providers, the title companies, the property appraisers and the property closing entity, all of whom were party to the real estate transactions that Plaintiff was induced to involve himself in.

37. That the Defendants fraudulently concealed these relationships from Plaintiff, contrary to Federal, New York State and Florida State Law.

38. Upon information and belief, the Defendants utilized these relationships to overvalue the aforementioned properties, control the flow of information and cash, and directly profited from the various agreements and overpaid sums. Upon information and belief, Defendants skimmed profits off the top at each stage of the transaction.

39. By reason of the foregoing, the Plaintiff has been damaged in the sum of $1,000,000.00, and continues to be damaged, in that the real estate must be sold at a loss or lost to foreclosure.

**PLEASE NOTE:   ALL ALLEGATIONS HEREINAFTER REFER TO DEFENDANTS, THE CAMERONS AND IBSWF ALONE**

## COUNT III

40. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "39" above as if more fully set forth herein.

41. As Plaintiff's Real Estate Brokers, the Defendants owed Plaintiff the duties of a fiduciary. To wit: Loyalty; Obedience; Disclosure; Confidentiality; Reasonable Care and Diligence; and Accounting for funds.

42. Plaintiff relied on the Defendants as a fiduciaries and was injured by Defendants, when Defendants were disloyal and dishonest in their lack of disclosure and trickery, in Defendants' lack of reasonable care or diligence, and in Defendants' refusal to honestly account for funds.

43. Upon information and belief, the Defendants intentionally used their positions as fiduciaries, and their expertise in the real estate business to defraud Plaintiff, both for Defendants' own financial gain and to the detriment of the Plaintiff.

44. By reason of the foregoing, the Plaintiff has been damaged in the sum of $1,000,000.00.

## COUNT IV

45. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "44" above as if more fully set forth herein.

46. That the Defendants intentionally misrepresented the condition of the Florida real estate market, causing Plaintiff to believe that investment in homes for rent-to-own situations was, at that time, not only wise, but a certainty for financial gain.

47.  That the Defendants knew said misrepresentations were false when they made them to Plaintiff; and that they made them for the purposes of gaining access to Plaintiff's good credit; thereby breaching their fiduciary duty and their duty as agents to Plaintiff.

48.  That Plaintiff justifiably relied upon said misrepresentations made by the Defendants, who are experts in Florida real estate investment.

49.  That Defendants targeted people who had bad credit, but who were interested in owning a home (and were therefore very eager to accept any offer they were given), as rent-to-owners to rent the properties Plaintiff was induced to purchase.

50.  That the rent-to-own process was one in which the rent-to-owners' monthly, rental costs began at an amount far less than the property owner's monthly mortgage costs. The property owner would pay out of pocket for the mortgage costs not covered by rent payments. Monthly rental costs for the rent-to-owners would slowly increase thereafter, until payments reached an amount greater than the monthly mortgage costs. However, because of the poorness of the majority of the rent-to-owners' credit and/or income, the rent-to-owners defaulted more often than not, leaving the home owner with a house worth less than the mortgage note and having already spent out-of-pocket monies to cover the mortgage costs not covered by rent payments.

51.  That, as a result of the rent-to-owners' bad credit and questionable financial situations, many people eagerly agreed to be rent-to-owners without much question, and all of the rent-to-owners have defaulted in total and have left the premises and/or absconded from the area.

52.  That Plaintiff has been damaged by these numerous losses in rental income.

53.  That by using Plaintiff's good credit, instead of involving their own assets, Defendants were able to profit from a situation that was risky, if not downright profitless, to the

Plaintiff and the rent-to-owners in the property, while being, upon information and belief, completely riskless to the Defendants.

54.     By reason of the foregoing, the Plaintiff has been damaged in the sum of $85,000.00, together with continuing damages at the rate of $9,000.00 per month.

## COUNT V

55.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "52" above as if more fully set forth herein.

56.     That all rental income from the properties that Defendants induced Plaintiff to purchase, were sent to Defendant, **IBSWF**, located at 3624 Del Prado Blvd. South, Cape Coral, Florida 33904, which purportedly managed the properties for Plaintiff (for free) by making repairs and collecting rents.

57.     That after the cost of supposed repairs, and payments on the supposed promissory notes were made, the remaining rental income was deposited in an account held jointly by Plaintiff and Defendant, **Kerry Cameron**, on behalf of himself and Defendant, **IBSWF**. Plaintiff received a periodic report concerning rental income, repair expenses and payments on the promissory notes.

58.     At no time did Plaintiff have any communication with the rent-to-owners, concerning the supposed repairs or the costs therefore. At no time did Plaintiff ever have contact with the supposed promissory note holders, nor did he know their names or whereabouts. At no time was Plaintiff given access to this information, nor has he seen cancelled checks made out for repairs or as payments to supposed note-holders.

59.     Upon information and belief, Defendants skimmed money from the rental income,

reporting phony repair costs and payments to made up or related note-holders, thereby directly profiting themselves through these outright falsities.

60. That as a result, Plaintiff has been damaged in the amount of $85,000.00, together with continuing damages at the rate of $9,000.00 per month, as a direct result of the Defendants' fraudulent management, reporting and paying practices, in reference to Plaintiff's properties.

## **WHEREFORE**,

Plaintiff requests a Judgment of the Court, for:

1. Damages to the Plaintiff, from the Defendants, in the amount of $3,170,000.00, together with continuing damages in the amount of $9,000.00 per month;

2. An accounting by Defendants, **The Camerons** and **IBSWF**, of all financial transactions relating to Plaintiff's investments;

3. A stay on any and all foreclosure actions on the properties which Defendants herein hold notes to;

4. Attorneys fees and the costs associated with the bringing of this suit; and

5. Such further and other relief as this Court may deem just and proper.

Dated January 12, 2009

Daniel G. Tronolone, Esq.
Tronolone & Surgalla, P.C.
*Attorneys for Plaintiff*
298 Main Street
Suite 200, Cathedral Place
Buffalo, NY 14202
(716) 856-2626