UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DANIEL FELLNER,

                          Plaintiff,

      v.                                                           **DECISION AND ORDER**
                                                                             09-CV-98S

KERRY CAMERON, individually and as Owner
and Investment Consultant of Investment Brokers
of SW Florida, Inc., NANCY CAMERON, individually
and as Owner and Licenced Realtor for Investment
Brokers of SW Florida, Inc., INVESTMENT BROKERS
OF SW FLORIDA, INC., US BANK NATIONAL
ASSOCIATION, as Trustee for BAFC 2007-3
RIVERSIDE BANK OF THE GULF COAST,
SECURITY NATIONAL MORTGAGE COMPANY
OF UTAH, COUNTRYWIDE HOME LOANS SERVICING,
LP, as transferee of Greenpoint Mortgage Funding, Inc.,
GREENPOINT MORTGAGE FUNDING, INC., and
AMERICA'S SERVICING COMPANY,

                          Defendants.

## I. INTRODUCTION

Plaintiff Daniel Fellner commenced this action by filing a Complaint in this Court, asserting claims under federal law and the laws of New York and Florida against Defendants Kerry and Nancy Cameron ("Camerons"), Investment Brokers of SW Florida, Inc. ("IBSWF"), US Bank National Association ("USBNA"), Riverside Bank of the Gulf Coast ("RBGC"),[1] Security National Mortgage Company of Utah ("SNMC"), Countrywide Home Loans Servicing, LP ("CHLS"), Greenpoint Mortgage Funding, Inc. ("GMFI"), and America's

---

[1] RBGC has been dismissed from this case by way of voluntary stipulation. (Docket No. 48.)

1

Servicing Company ("ASC") relating to Plaintiff's purchase of real property located in Florida. All Defendants have moved to dismiss as follows: USBNA and ASC (Docket No. 8), SNMC (Docket No. 12), CHLS (Docket No. 33), the Camerons and IBSWF (Docket No. 40). Alternatively, Defendant SNMC has moved to transfer the case to the Southern District of Florida. (Docket No. 12.) The Camerons and IBSWF have moved to transfer the case to the Middle District of Florida. (Docket No. 40.) As part of his response to SNMC's motion (Docket No. 38) and response to the Camerons & IBSWF's motion (Docket No. 68), Plaintiff has cross-moved for leave to file an amended complaint.

For the reasons discussed below, this Court finds that transfer to the United States District Court for the Middle District of Florida is warranted. Accordingly, this Court will not address Defendants' requests for dispositive relief, or Plaintiff's motions for leave to amend.

## II. BACKGROUND

**A. Facts**

The following facts, alleged in the complaint, are assumed true for purposes of the instant motion.

Defendants Kerry and Nancy Cameron, both of whom are Florida residents, are licensed realtors and real estate brokers. (Docket No. 1, Compl. ¶¶ 2-3.) As such, they assist clients in selling and investing in real estate, procuring mortgages, and managing mortgaged and/or purchased properties. (Id. ¶ 3.) The Camerons conducted business through IBSWF, a business incorporated in Florida that specializes in selling and investing

2

in real estate. (Id. ¶ 5.)

Between the years 1992 and 2005, Plaintiff, a New York State resident, who has no prior real estate experience, entered into several real estate investments with the Camerons and IBSWF. (Id. ¶¶ 1, 9, 11.) Under the arrangement, the Camerons and IBSWF would identify real estate properties for purchase by Plaintiff, arrange funding for the purchase, prepare the necessary paperwork, and secure tenants to live at the properties on a "rent-to-own" basis. (Id. ¶ 9.) The Camerons would send paperwork related to the real estate investments to Plaintiff for his signature, with instructions to sign the documents and immediately return the signed copies to them in Florida. (Id. ¶ 10.) The Camerons and IBSWF also managed the properties, made repairs, and collected rental income from the tenants. (Id. ¶¶ 9, 56.)

The Camerons always purchased the properties on Plaintiff's "credit." (Id. ¶ 17.) Although the properties had a "cash-down requirement," Plaintiff never made any cash payments on the properties because the Camerons informed him that this requirement was "covered by [] promissory notes." (Id. ¶ 17.) Plaintiff, however, alleges that he never saw any such notes. (Id. ¶ 17.)[2]

Between February 1, 2007 and December 1, 2007, Plaintiff purchased the five properties, at issue here, through the Camerons and IBSWF. (Id. ¶¶ 7, 20.) All five properties are located in Florida. (Id. ¶¶ 7, 20.) Plaintiff purchased these properties in the same manner in which he purchased the previous properties. (Id. ¶ 20.) Specifically, the

---

[2] Plaintiff ambiguously states that he saw two promissory notes that were similar to ones that he "held in the past." (Compl. ¶ 17.) Plaintiff does not indicate what notes he held in the past or through whom he held these notes.

3

Camerons and IBSWF prepared the necessary paperwork, obtained the mortgages on Plaintiff's behalf, and stated that the cash down requirement was covered by a promissory note. (Id. ¶¶ 17, 20.) Plaintiff, however, alleges that he "never saw" the promissory note covering these properties. (Id. ¶ 20.) The mortgages on the properties are held by Defendants USBNA, RBGC, SNMC, CHLS, and GMFI. (Id. ¶¶ 7, 20.)

Plaintiff relied on Defendants' representations and expertise in purchasing the properties but the purchase prices were, in fact, overinflated and the amount of the mortgages exceeded the actual value of the properties. (Id. ¶¶ 22-23.) Plaintiff commenced this suit asserting two claims against all Defendants for "fraudulent overvaluation of real property" and "fraudulent business dealings and undisclosed conflicts of interest" in violation of unspecified Federal, New York State, and Florida State laws. (Id., Introduction, ¶¶ 24-39.) His third, fourth, and fifth claims, which pertain to the Camerons and IBSWF only, allege: (1) breach of fiduciary duty; (2) fraudulent representation, predatory lending, and targeting of individuals with bad credit; and (3) fraudulent management of properties by skimming money from rental income. (Id., Introduction, ¶¶ 40-60.) These claims appear to be predicated on Florida law. (Docket No. 1, ¶ 13.) Thereafter, Defendants filed the instant motions to dismiss and/or transfer.

**A.  Defendants' Motions to Transfer**

   **i.  Standard**

A district court may transfer a civil action to any other district where the case might have been brought if the transfer serves "the convenience of the parties and witnesses,

4

[and is] in the interest of justice." 28 U.S.C. § 1404(a). The primary goal of section 1404(a) is to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. Continental Grain Co v. Barge FBL-585, 364 U.S. 19, 27, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960).

In determining whether the interests of justice and convenience support transfer, district courts evaluate nine factors. Those factors include: (1) the convenience of witnesses; (2) the convenience of parties; (3) the location of the relevant documents and the relative ease of access to sources of proof; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative financial means of the parties; (7) the comparative familiarity of each district with the governing law; (8) the weight afforded plaintiff's choice of forum; and (9) judicial economy and the interests of justice. Herbert Ltd. Partnership v. Electronic Arts Inc., 325 F. Supp. 2d 282, 285-86 (S.D.N.Y. 2004).

Courts have broad discretion in making determinations of convenience under section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis. D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006). However, absent a strong showing that the balance of factors favors the alternative forum, the plaintiff's choice of forum will not be disturbed. Roland v. Hargi Systems, Inc., No. 00 Civ. 341, 2001 WL 241792, at *4 (W.D.N.Y. Feb. 28, 2001) (Elfvin, J.) (citing Maganlal v. M.G. Chem. Co., 942 F.2d 164, 167 (2d Cir. 1991)).

Ordinarily, the plaintiff's choice of forum is accorded relatively greater importance than the other factors. "That is not the case, however, when the operative facts have few meaningful connections to the plaintiff's chosen forum." Harris v. Brody, 476 F. Supp. 2d

5

405, 406 (S.D.N.Y. 2007) (citing Berman v. Informix Corp., 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998)). Under those circumstances, the importance of the plaintiff's choice of forum measurably diminishes. Harris, 476 F. Supp. 2d at 406 (internal citation omitted).

With these principles in mind, this Court will address the factors governing a motion to transfer based upon the affidavits and other submissions of the parties.

### ii. Analysis

#### 1. Factors One and Two: The Convenience of the Witnesses and Parties

"The convenience of both party and non-party witnesses is probably the single most important factor in the analysis of whether transfer should be granted." Wagner v. New York Marriot Marquis, 502 F. Supp. 2d 312, 315 (N.D.N.Y. 2007) (internal quotation marks and citation omitted). Although "the convenience of non-party witnesses is accorded more weight than that of party witnesses," party witnesses are still relevant. ESPN, Inc. v. Quiksilver, Inc., 581 F. Supp. 2d 542, 547 (S.D.N.Y. 2008).

In order to demonstrate the alleged inconvenience, the "party moving to transfer on the ground that witnesses will be inconvenienced is obliged to 'name the witnesses who will be appearing and describe their testimony...'" Beatie and Osborn LLP v. Patriot Scientific Corp., 431 F. Supp. 2d 367, 396 (S.D.N.Y. 2006) (quoting Schieffelin & Co. v. Jack Co. of Boca, Inc., 725 F. Supp. 1314, 1321 (S.D.N.Y. 1989)). But in cases where discovery has not been conducted, a party "will not be held to the requirement of stating with precision each witness and document." Heyco, Inc. v. Heyman, 636 F. Supp. 1545, 1549-50 (S.D.N.Y. 1986). In these circumstances, courts are permitted to determine the logical location of the witnesses based upon an examination of the record. Id.

Here, none of the parties specifically identify the witnesses who will testify, nor do they identify the nature of such testimony. However, since discovery has not yet occurred, the parties are not required to make such disclosures. Consequently, this Court must determine the logical location of the witnesses.

Upon review of the Complaint, affidavits, and other submissions, this Court finds that the majority of the witnesses are likely located in Florida. For example, the crux of this action is that Defendants purchased real estate on Plaintiff's behalf despite knowing that the Florida real estate market was "in a major slump," and that the values of the five, Florida-based properties were "grossly overinflated." (Compl. ¶ 22.) To prove this allegation at trial, Plaintiff will need to call witnesses who are familiar with, and can testify to, the state of Florida's real estate market. Those witnesses are likely located in Florida. Moreover, Plaintiff will also need to call the Camerons and other employees of IBSWF, if any, to determine whether the purchases were made despite such knowledge.

Further, the five properties at issue in this case are all located in Florida. Because Plaintiff alleges that the Camerons and IBSWF reported phony repairs in order to justify monetary withdrawals from the bank account that held the tenants rental income (Compl. ¶¶ 55-60), the testimony of tenants may be necessary to determine whether the work actually was completed. It seems more likely than not that current or former tenants remain in or near Florida.

Lastly, Plaintiff alleges that Defendants failed to disclose certain conflicts of interest with, among others, builders, contractors, property appraisers, and the property closing entity. Presumably, these groups of individuals are located in Florida, and their testimony is necessary because Plaintiff will have to establish the alleged conflict of interest, and

7

demonstrate how this conflict was used to manipulate the flow of information to Plaintiff. Accordingly, this Court finds that the first factor, the location of the non-party witnesses, favors transfer.

With respect to party witnesses, this factor is largely neutral. Plaintiff resides in New York, the Camerons and IBSWF reside in Florida, and the banks do not reside in either Florida or New York and therefore would have to travel regardless of the venue.

### 2. Factors Three and Four: The Locus of the Operative Facts and the Location of the Relevant Documents

In cases such as this one, where the action arises out of a contract, the locus of the operative facts is "where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." Oubre v. Clinical Supplies Management, Inc., No. 05 Civ. 2062, 2005 WL 3077654, at *4 (S.D.N.Y. Nov. 17, 2005) (quoting Prudential Sec. Inc. v. Norcom Dev., Inc., No. 97 Civ. 6308, 1998 WL 397889, at *4 (S.D.N.Y. Jul. 16, 1998)). Further, although the location of documents is a proper consideration, it has become "largely a neutral factor in today's world of faxing, scanning, and emailing documents." Am. Steamship Owners Mut. Protection and Indem. Ass'n, Inc. v. LaFarge North Am., Inc., 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007).

Here, the locus of operative facts is Florida since almost all, if not all, of the events giving rise to this suit occurred there. For instance, the mortgages, sales agreements, and rent-to-own agreements were negotiated, witnessed, and executed in Florida.[3] All of the

---

[3] Plaintiff "concedes that the mortgages dealing with these properties may have been executed in the State of Florida, and the closings, likewise, are likely to have taken place in Florida." (Docket No. 67, p. 17) (emphasis in original).

properties securing the mortgages and housing the rent-to-own tenants are located in Florida. Although Plaintiff signed certain documents in New York related to his real estate investments, he immediately returned those documents to the Camerons in Florida, who then maintained the paperwork. Thus, looking at the operative facts as a whole, Florida "bears a much more intimate connection to the events underpinning this case than does New York" and, therefore, this factor supports transfer. In re Nematron Corp. Securities Litigation, 30 F. Supp. 2d 397, 404 (S.D.N.Y. 1998).

Although Plaintiff argues that most of the documents are presently in his possession in Buffalo, New York, as previously noted, this has become a neutral consideration. Accordingly, on balance, these two factors favor transfer.

### 3. *The Availability of Process to Compel the Attendance of Unwilling Witnesses*

This factor calls for a determination of which Court – the Court where the suit was originally filed or the Court where transfer is sought – possesses subpoena power to compel the attendance of unwilling witnesses. See Beatie and Osborn LLP v. Patriot Scientific Corp., 431 F. Supp. 2d 367, 397-98 (S.D.N.Y. 2006). Here, the parties have not specified the need for any non-party witnesses at all, let alone any evidence that non-party witnesses would be unavailable to testify or unwilling to travel to New York or Florida. Therefore, this factor cannot tip the balance in favor of either party. See Beckerman v. Heiman, No. 05 Civ. 5234, 2006 WL 1663034, at *8 (S.D.N.Y. Jun. 16, 2006) (finding that this factor did not favor either side because neither party demonstrated the unavailability of non-party witnesses). Accordingly, the availability of compulsory process is a neutral

factor.

### 4.  *The Relative Financial Means of the Parties*

Here, neither party has provided specific information concerning their financial means, therefore, this factor is neutral.  See Ivy Society Sports Group, LLC v. Baloncesto Superior Nacional, No. 08 Civ. 8106, 2009 WL 2252116, at *8 (S.D.N.Y. Jul. 28, 2009) ("Both sides have portrayed themselves as struggling financially, but given that no party has provided specific information concerning its assets and resources, the relative means of the parties is a neutral factor.").[4]

### 5.  *The Comparative Familiarity of Each District with the Governing Law*

This factor supports transfer when a federal court based in one state is asked to apply the law of another state.  See Heyco, 636 F. Supp. at 1550-51 (holding that this factor supports transfer because "[a] New Jersey federal court is better suited to apply New Jersey state law [] than is a New York federal court.").  Here, it appears that the claims brought under Florida law predominate and a court in Florida will be best suited to consider those claims.  (Compl. ¶¶ 33, 37.)  Accordingly, this factor favors transfer.

### 6.  *The Weight Afforded to Plaintiff's Choice of Forum*

Although Plaintiff's choice of forum is entitled to significant deference, this factor is

---

[4] Plaintiff argues that the Defendants "likely" have greater resources, but he provides no specific information to support this contention.  (Docket No. 67, p. 16.)

no longer given the "near-decisive weight" previously afforded under the predecessor of 28 U.S.C. § 1404(a), forum non conveniens. See HGI Marketing Services, Inc. v. Pepsico, Inc., No. 92 Civ. 981, 1992 WL 349675, at *4 (N.D.N.Y. Nov. 11, 1992) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 91 L.Ed. 1055, 67 S.Ct. 839 (1947)); see also Vasallo v. Niedermeyer, 495 F. Supp. 757, 759 (D.C.N.Y. 1980). Here, application of the relevant factors demonstrates that Plaintiff's choice of forum is not entitled to significant deference. See Farrior v. George Weston Bakeries Distribution, Inc., No. 08 Civ. 2705, 2009 WL 113774, at *4 (E.D.N.Y. Jan. 15, 2009).

### 7. *Judicial economy and the interests of justice*

The parties have not specifically addressed this factor. Nonetheless, "[t]he relative docket conditions of the transferor and transferee courts are relevant to the determination of a motion to transfer venue pursuant to 28 U.S.C. § 1404(a)." Eichenholtz v. Brennan, 677 F.Supp. 198, 202 (S.D.N.Y.1988). In this context, courts have measured docket congestion in a number of ways. In particular, one court has measured the median disposition time to resolve a case, see In re Hanger Orthopedic Group, Inc. Securities Litigation, 418 F. Supp. 2d 164, 171 (E.D.N.Y. 2006), while another court measured the comparative increase in cases over a 12-month period of time, Eichenholtz, 677 F. Supp. at 202.

SNMC seeks transfer to the Southern District of Florida. The Camerons and ISBWF seek transfer to the Middle District of Florida. Having reviewed the locales at issue here, as alleged in the Complaint, I take judicial notice of the fact that the properties are located

11

in the Middle District of Florida, and the Camerons and IBSWF reside there. Accordingly, the Middle District is the proper transferee court.

Further, upon examination of each court's respective dockets, this Court finds this factor supports transfer. For instance, this Court's median disposition time to resolve a civil case, as measured over the 12-month period ending March 31, 2009, to resolve a civil case is 11.2 months, whereas it takes the Middle District of Florida 7.9 months. See Administrative Office of the United States Courts, Federal Judicial Caseload Statistics 2009, available at http://www.uscourts.gov/caseload2009/contents.html (last visited Feb. 19, 2010). Additionally, over the 12-month period ending March 31, 2009, this Court's civil and criminal filings have increased 7.4% and 18.2%, respectively. Conversely, the Middle District of Florida's civil filings have increased 6.6% while its criminal filings have actually decreased by 3.9%. Id. Accordingly, this Court believes that a transfer to the Middle District of Florida would not be an unwarranted or overly onerous imposition and, therefore, the interests of justice favors transfer.

For the reasons stated above, this Court finds that a balance of the nine factors weighs in favor of a transfer of venue. Accordingly, Defendants' Motions to Transfer are granted.

**B.   Defendants' Motions to Dismiss and Plaintiff's Motion to Amend**

Because this Court will grant Defendants' Motions to Transfer, it will not address Defendants' Motions to Dismiss (Docket Nos. 8, 12, 33, 40) or Plaintiff's Cross Motions for leave to file an Amended Complaint (Docket Nos. 38, 68). Those motions are reserved for the Middle District of Florida to adjudicate in its discretion.

## IV. CONCLUSION

For the reasons stated above, the motions to transfer pursuant to 28 U.S.C. § 1404(a) filed by the Camerons, IBSWF, and SNMC are granted.

## V. ORDERS

IT IS HEREBY ORDERED, that Defendant SNMC's Motion to Transfer Venue (Docket No. 12) is GRANTED.

FURTHER, that Defendants Cameron and IBSWF's Motion to Transfer Venue (Docket No. 40) is GRANTED.

FURTHER, that this case shall be transferred to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. §1404(a).

FURTHER, that the Clerk of the Court shall take the steps necessary to transfer this case to the Middle District of Florida and then close this case.

SO ORDERED.

Dated: February 23, 2010
        Buffalo, New York

                                       /s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                              Chief Judge
                                       United States District Court