**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION**

DANIEL FELLNER,

    Plaintiff,

v.   CASE NO. 2:10-CV-155-FtM-36SPC

KERRY CAMERON, individually and as Owner and Investment Consultant of Investment Brokers of SW Florida, Inc.; NANCY CAMERON, individually and as Owner and Licensed Realtor for Investment Brokers of SW Florida, Inc.; INVESTMENT BROKERS OF SW FLORIDA, INC.; SECURITY NATIONAL MORTGAGE COMPANY OF UTAH; ROYAL PALM MORTGAGE, INC.; JOHN MURNANE, individually and as President of Royal Palm Mortgage, Inc.; BANYAN TITLE & ESCROW, INC.; STEVEN O. SHAFFER, individually and as President of Banyan Title; AMERICA'S FIRST HOME, LLP; AMERICA'S FIRST HOME; AMERICA'S FIRST HOME OF SOUTHWEST FLORIDA, LLP; AMERICA'S FIRST HOME OF SOUTHWEST FLORIDA; BARRY E. FREY, individually and as Registered Agent for America's First Home, America's First Home, LLP, America's First Home of Southwest Florida, and America's First Home of Southwest Florida, LLP; and WELLS FARGO BANK, N.A., successor by merger to Wells Fargo Home Mortgage, Inc.,

    Defendants,
_____/

**<u>ORDER</u>**

    **THIS CAUSE** is before the Court on two motions to dismiss. Defendants Steven Shaffer

("Shaffer") and Banyan Title and Escrow, Inc. ("Banyan Title") filed their motions to dismiss on July 1, 2011 (Dkts. 204, 205). Plaintiff filed responses in opposition to these motions on July 22, 2011 (Dkts. 210, 211). Plaintiff also included a cross motion for leave to amend his complaint if the Court found that he failed to state a claim upon which relief can be granted. Banyan Title and Shaffer did not respond to Plaintiff's cross motion. For the reasons stated below, the Court will grant both motions

I.  **BACKGROUND**

As alleged in the Amended Complaint, Plaintiff was and is still a resident of New York (Dkt. 128, p. 4, ¶1). In the mid 1990s, Kerry Cameron, a resident of Florida, encouraged Plaintiff to loan money allegedly to a client of Kerry and Nancy Camerons' (the "Camerons") and Investment Brokers of SW Florida, Inc.'s ("IBSWF") for a real estate purchase. *Id*. at p. 6, ¶8.[1] In exchange for the loan, Plaintiff would receive an interest rate return. *Id*. Plaintiff agreed to such loans twice and received full payments. *Id*. at p. 6, ¶8. The Camerons are licensed real estate brokers in Florida and through their business, IBSWF, acted as real estate brokers, salespersons and managers over all the properties that were acquired by Plaintiff. *Id*. at pp. 7-8, ¶12.

Between 1992 and 2005, Kerry Cameron induced Plaintiff into participating in several real estate propositions, notes and mortgages for investment whereby the Camerons and IBSWF located and valued properties for purchase from American's First Home[2] ("AFH"), conducted purchase

---

[1] The Facts Section of the Amended Complaint begins with paragraph 8, after following paragraphs 1 through 12, which identify the parties in this case.

[2] America's First Home includes America's First Home, LLP, America's First Home, America's First Home of Southwest Florida, LLP and America's First Home of Southwest Florida.

negotiations on behalf of the parties, set up funding for the purchase and rent of the properties through Royal Palm Mortgage, Inc. ("RPMI"), prepared the mortgage and purchase paperwork as "co-broker" with Banyan Title & Escrow, Inc. ("BTEI"), managed the properties purchased by Plaintiff by finding available tenants to live in the houses on a "rent to own" basis, and controlled and prepared the rent-to-own documents. *Id*. at p. 7, ¶9. All paperwork relating to the mortgages and rent-to-own agreements were given to Plaintiff by IBSWF and/or the Camerons with the instruction to sign and return them immediately. *Id*. at p. 7, ¶10. Plaintiff signed the paperwork, relying on IBSWF and the Camerons' expertise, and never received paperwork from any other Defendant. *Id*.

While IBSWF and the Camerons located properties available for purchase in and around Lee County and other counties that they deemed suitable for investment in this rent-to-own plan, they also maintained that the other "parties" in the transactions were experts in their various fields, were unrelated to IBSWF and the Camerons, and were entering into the contracts in good faith and legitimately. *Id*. at pp. 9-10, ¶¶15-16. Because the real estate was purchased on his credit, Plaintiff signed all real estate documents for the purchase and never sent money for the cash-down requirements, relying on the promises of IBSWF and the Camerons that the money would be covered by promissory notes used in lieu of a down payment. *Id*. at p. 10, ¶17. Plaintiff never saw a promissory note, nor did he know from whom the money was coming. *Id*. Despite the representation of the existence of promissory notes, the real estate paperwork does not reflect the use of promissory notes for the funding of the purchases. *Id*. at p. 10, ¶18.

In October 2006, Kerry Cameron, acting on behalf of the Camerons and IBSWF, contacted Plaintiff about eight properties that he insisted Plaintiff should be purchase. *Id*. at p. 10, ¶19. Kerry

Cameron represented that the properties were suitable as investments in the rent-to-own plan and would be profitable. *Id*.

Between February 2007 and December 2007, Plaintiff, relying on the representations of IBSWF and the Camerons with respect to the properties, purchased five of the properties. *Id*. at p. 10, ¶21. The general scheme of the purchases was as follows: the mortgage was procured in Plaintiff's name by the Camerons and/or IBSWF, through RPMI and with various mortgage providers, including Security National Mortgage Company of Utah ("SNMC"); and the cash-down requirement on the property was taken care of with a promissory note that Plaintiff never saw and that was never reflected on the real estate paperwork. *Id*. It was represented to Plaintiff that the price of the properties, the timing for the purchases and the manner in which the properties were purchased was legal and conducive to the parties' plan to employ the rent-to-own method to sell the properties for profit at a later date. *Id*. at p. 11, ¶22. Plaintiff relied on Defendants' expertise and representations regarding the value of the properties. *Id*. at pp. 11-12, ¶¶23-25.

## II.  PROCEDURAL HISTORY

Plaintiff filed his initial complaint on January 28, 2009 (Dkt. 1) and an amended complaint on October 28, 2010 (Dkt. 128). He alleges five claims against numerous Defendants: 1) fraudulent inducement against all Defendants; 2) fraudulent concealment of material facts against all Defendants; 3) breach of fiduciary duty against the Camerons and IBSWF; 4) breach of fiduciary duty to provide sound advice and/or reckless or negligent advisement against the Camerons and IBSWF; and 5) mismanagement and conversion of funds against the Camerons and IBSWF.

### III.     LEGAL STANDARDS

#### A.     Federal Rule of Civil Procedure 4(m)

"A plaintiff is responsible for serving the defendant with a summons and the complaint within the time allowed under Rule 4(m).  Rule 4(m) requires a plaintiff to properly serve the defendant within 120 days of the plaintiff filing the complaint." *Lepone-Dempsey v. Carroll County Commissioners*, 476 F.3d 1277, 1280 (11th Cir. 2007)(citing Fed. R. Civ. P. 4(m)).  The court may dismiss the action without prejudice or direct the plaintiff to effectuate service within a specific time period if the plaintiff fails to properly serve the defendant within 120 days.  *Id*. at 1281; Fed. R. Civ. P. 4(m).  However, an extension can be granted if the plaintiff shows good cause for the failure.  *Id*.  Absent a showing of good cause, the court has discretion to extend the time for service of process.  *Id*. at 1282.

#### B.     Motion To Dismiss under Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss, a pleading must first comply with Fed. R. Civ. P. 8(a)(2) by including a "'short and plain statement showing that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient.  *Id.* (citing *Bell Atlantic Corp, et al. v. Twombly, et al.*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  Mere naked assertions, too, are not sufficient.  *Id*.  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face."  *Id*. (quoting *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citation omitted).  The court, however, is not bound to accept as true a legal

conclusion stated as a "factual allegation" in the complaint. *Id*. at 1950. Therefore, "only a claim that states a plausible claim for relief survives a motion to dismiss." *Id*.(citation omitted).

### C. Heightened Pleading Standard for Fraud Claims

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Eleventh Circuit has held that a plaintiff must allege: 1) precise statements, documents or misrepresentations made; 2) time, place and person responsible for the statement; 3) the content and manner in which these statements misled the plaintiff; and 4) what the defendants gained from the alleged fraud. *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010)(citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997)). However, the application of Rule 9(b) must not abrogate the concept of notice pleading. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)(citing *Durham v. Bus. Management Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988)).

### D. Leave to Amend under Federal Rule of Civil Procedure 15(a)

Under Rule 15(a)(2), a party may amend his complaint only with the opposing party's written consent or leave from the court. The court should freely give leave when justice requires it. Fed. R. Civ. P. 15(a)(2). A denial of a motion to amend is permitted if the amendment would be futile to cure the defects of the complaint. *Galindo v. ARI Mut. Ins. Co.*, 203 F.3d 771, 777 n. 10 (11th Cir. 2000)(citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). However, "[i]f the underlying facts or circumstances relied on by plaintiff may be a proper subject of relief, leave to amend 'should be freely given.'" *Stringer v. Jackson*, 392 Fed. Appx. 759, 760 (11th Cir. Aug. 16, 2010)(citing *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262 (11th Cir.

2004)(quoting Fed. R. Civ. P. 15(a)(2)).

**IV.     ANALYSIS**

Banyan Title and Shaffer move to dismiss Plaintiff's fraud in the inducement and fraudulent concealment of material facts claims for four reasons: 1) Plaintiff failed to serve them with his amended complaint within 120 days; 2) the amended complaint does not comply with Fed. R. Civ. P. 8, which requires fair notice of Plaintiff's claims; 3) Plaintiff failed to plead with specificity according to Fed. R. Civ. P. 9(b); and 4) Plaintiff failed to state a cause of action upon which relief can be granted (Dkt. 204, pp. 2-9; Dkt. 205, pp. 2-8).

In opposition to Banyan Title and Shaffer's motions filed pursuant to Rule 4(m), Plaintiff states that the motions should be denied as moot because Defendants received a six-month extension of the remaining case management deadlines and the prior attempts to serve Defendants with a waiver of service pursuant to Rule 4(d) were returned as undeliverable (Dkt. 210, pp. 5-6; Dkt. 211, pp. 5-6).

As to the motions made pursuant to Rules 8, 9(b) and 12(b)(6), Plaintiff contends that he sufficiently alleged a claim for fraudulent inducement and fraudulent concealment of material facts (Dkt. 210, pp. 6-12; Dkt. 211, pp. 6-12). Specifically, Plaintiff argues that he has alleged a pattern of transactions that provide a reasonable delineation of the underlying acts test found in *NCR Credit Corp. v. Reptron Elecs., Inc.*, 155 F.R.D. 690 (M.D. Fla. 1994) (Dkt. 210, pp. 10-12; Dkt. 211, pp. 10-12). Based on these allegations, Plaintiff contends that he has satisfied the requirements for the more relaxed standard for pleading his fraud claims.

To begin, the Court distinguishes this case from previous cases that relaxed the Rule 9(b) requirement of specificity. In *NCR Credit Corp.*, this Court notes situations where the strict

application of Rule 9(b) could result in substantial unfairness to litigants who could not possibly have detailed knowledge of all the circumstances surrounding the alleged fraud. 155 F.R.D. at 692 (citing *In re Sahlen & Assocs. Inc. Securities Litigation*, 773 F. Supp. 342, 352 (S.D. Fla. 1991)); *see McDonough v. Americom Int'l Corp.*, 151 F.R.D. 140, 142 (M.D. Fla. 1993)("Logically, where such information is not available before commencement, this requirement [under Rule 9(b)] should be relaxed."). In those situations, the reasonable delineation of the underlying acts and transactions test should apply because the nature of the litigation, specifically securities fraud, makes it impossible for the litigant to have access to the detailed knowledge necessary to meet the requirements of Rule 9(b). *Id.*

The present case does not involve securities fraud, and there are no circumstances outlined in the complaint that require the use of the reasonable delineation of the underlying acts and transactions test. Consequently, the Court does not apply this relaxed standard. Instead, the Court will determine whether Counts One and Two of the Amended Complaint meet the requirements of Rule 9(b).

### A. Service of Process

The Court finds that although Plaintiff did not serve Defendants Shaffer and Banyan Title within 120 days, the issue is now moot. Plaintiff states that the initial waivers of service were returned undelivered (Dkt. 210, p. 6; Dkt. 211, p. 6). Thereafter, the clerk issued amended summonses and Plaintiff effectuated service on June 7, 2011. *Id.* Furthermore, these Defendants have not been unduly prejudiced because the Court granted their request for an extension of the remaining case management deadlines (Dkts. 206, 207). Therefore, the Court will deny the motion to dismiss as to Fed. R. Civ. P. 4(m).

### B.      Fraud in the Inducement

To state a cause of action for fraud in the inducement, the plaintiff must allege: 1) a false statement regarding a material fact; 2) the statement maker's knowledge that the representation is false; 3) intent that the representation induces another's reliance; and 4) consequent injury to the party acting in reliance. *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 808-09 (11th Cir. 2010). The heightened pleading standard "serves an important purpose in a fraud action by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Brooks v. Blue Cross Blue Shield of Fla. Inc.*, 116 F.3d 1364, 1370-71 (11th Cir. 1997); *see Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1302 (S.D. Fla. 2009)(same).

In the Amended Complaint, Plaintiff contends that Defendants and their agents inflated the values of the properties and knew or should have known that the property values were inflated well above the fair market value at the time, in and around the respective areas where each property was located (Dkt. 128, p. 13, ¶30). Furthermore, Plaintiff alleges that Defendants received "kick backs" from the real estate transactions from the difference between the fair market value of the properties and the inflated purchase price and/or received commissions and/or fees from these transactions at a time when the real estate business was severely declining. *Id*. at p. 13, ¶32. He contends that all Defendants knew or should have known that the real estate market at the time of the purchases was unstable. *Id*. at p. 13, ¶33. Defendants either made misrepresentations or passively accepted the false representations without correction or objection with the intent to deceive Plaintiff and induce him to purchase the properties. *Id*. at pp. 13-14, ¶33.

Plaintiff does not identify Banyan Title and Shaffer's specific actions in the amended

complaint. However, Plaintiff claims that all Defendants: 1) knew the property values were inflated well above market value of like properties, *id*. at pp. 13-16, ¶¶30, 33-40; 2) knowingly endorsed the inflated evaluations and benefitted from the transactions, *id*. at p. 13, ¶30; 3) received kickbacks and/or commissions/fees from the transactions, *id*. at p. 13, ¶32; and 4) perpetuated the representations with the intent to defraud Plaintiff and induce him to purchase the properties, *id*. at p. 15, ¶41.

Plaintiff has failed to meet his burden to allege a fraudulent inducement claim against Banyan Title and Shaffer. Plaintiff did not include any false statement that Shaffer or an agent of Banyan Title made regarding any of the property transactions. Furthermore, it is unclear as to which property transactions Banyan Title and Shaffer were involved. Based on the allegations in the amended complaint, it appears that Plaintiff interacted only with the Camerons and IBSWF, not any of the other Defendants. *See Restrepo v. Wells Fargo Bank, N.A.*, No. 09-22436-CIV, 2010 WL 374771, at *2 (S.D. Fla. Feb. 3, 2010)("Moreover, the facts alleged indicate that if there was fraud in the inducement the only persons involved worked for [other lenders].").

Indeed, the amended complaint is virtually silent as to allegations against Steven Shaffer, individually, and as president of Banyan title. Specifically, it only indicates that Shaffer is a defendant and that he resides in Lee County. Otherwise, Shaffer is lumped together with the other 13 defendants and referred to generally. Because this case involves multiple defendants, Plaintiff's fraud-based claims should inform each defendant as to the nature of his alleged participation in the fraud. *Ambrosia Coal & Construction Co. v. Morales*, 482 F.3d 1309, 1316-17 (11th Cir. 2007).

Here, Plaintiff does not alleged the who, what, where, when and how as to Defendants Shaffer or Banyan Title. Therefore, the Court will dismiss Count One of Plaintiff's Amended

Complaint against Banyan Title and Shaffer.

### C. Fraudulent Concealment of Material Facts

"Causes of action for . . . fraudulent inducement and fraudulent concealment have identical elements, which are: (1) false statement of material fact or suppression of truth by the defendant; (2) the defendant knew or should have known the statement was false, or made the statement without knowledge as to truth or falsity; (3) the defendant intended the false statement or omission induce the plaintiff's reliance; and (4) the plaintiff justifiably relied to his detriment." *Grills v. Philip Morris USA, Inc.*, 645 F. Supp. 2d 1107, 1122 (M.D. Fla. 2009)(external citations omitted). Additionally, the intent to fraudulently conceal material facts must be accompanied by time and place details. *See Greenberg v. Miami Children's Hosp. Research Institute, Inc.*, 264 F. Supp. 2d 1064, 1073-74 (S.D. Fla. 2003).

In Count Two, Plaintiff alleges that "all Defendants had undisclosed contacts with all or some of the following: the builders (AFH), the contractors (AFHC), other mortgage providers (including RPMI and SNMC), loan servicing companies (including RPMI), the title companies (including BYEI), the property appraisers and the property closing entity, all of whom were party to the real estate transactions that Plaintiff was induced to involve himself in" (Dkt. 128, p. 16, ¶46). Plaintiff further contends that Defendants utilized these relationships to overvalue the properties, control the flow of information and cash and directly profited from the various agreements and overpaid sums. *Id.* at ¶48.

Plaintiff has failed to meet his burden to allege a fraudulent concealment of material facts claim against Banyan Title and Shaffer. First, Plaintiff does not specifically identify actions taken or omissions made by Shaffer or an agent of Banyan Title.. Second, it is unclear how the

undisclosed contacts of each (or any) of the Defendants affected the transactions. Third, it is unclear how the concealment of the relationship among Defendants induced Plaintiff to enter into the real estate transactions. Therefore, the Court must dismiss Count Two of Plaintiff's Amended Complaint.

### D.     Leave to Amend

Plaintiff requests leave to amend his complaint if the Court finds that he has not sufficiently alleged his fraud claims against Banyan Title and Shaffer (Dkt. 210, p. 13; Dkt. 211, p. 13). Based on the information provided in the amended complaint, the Court cannot make a determination as to whether Plaintiff has viable fraud claims. The Court will grant Plaintiff leave to amend his complaint.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** as follows:

1. Steven Shaffer's Motion to Dismiss (Dkt. 204) is **DENIED in part** and **GRANTED in part**. The Motion is denied to the extent that it seeks a dismissal of the amended complaint pursuant to Fed. R. Civ. P. 4(m). The Motion is granted on all other grounds.

2. Banyan Title and Escrow, Inc.'s Motion to Dismiss (Dkt. 205) is **DENIED in part** and **GRANTED in part**. The Motion is denied to the extent that it seeks a dismissal of the amended complaint pursuant to Fed. R. Civ. P. 4(m). The Motion is granted on all other grounds.

3. Plaintiff's Cross Motion for leave to amend his complaint is **GRANTED**.

4. Plaintiff's Amended Complaint (Dkt. 128) is **DISMISSED without prejudice**.

5.  Plaintiff is granted leave to file a second amended complaint within **FOURTEEN (14) DAYS** from the date of this Order.

**DONE AND ORDERED** at Ft. Myers, Florida, on September 20, 2011.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

**COPIES TO**:
COUNSEL OF RECORD